The next case for today is 2015-1732 Advanced Ground Information v. Life360. The issue in this case is whether or not a claim limitation can be construed as a means plus function limitation when it does not use the term means. It was never intended to be a means. How do you deal with your expert, Dr. Goldberg, saying that he was not aware whether the term symbol generator has a meaning in computer science? He didn't actually say that, Your Honor. That's one of the key points why we think the district court clearly erred here. What he said is that he was, and I can actually read the testimony. Generator is a term of art. Symbol is a term of art. Whether you heard symbol generators in the course of studying computer science, I'm not aware of. But certainly, in the context of the patent specification in the claim, one of the skill in the art would understand what a symbol generator is. There's a transcript here where it said when, but it clearly means what. What a symbol generator is. So what he said was that, okay, the term exactly, those two words, were not used in the past. But persons skilled in the art would know exactly what it is when they heard it. And that's the standard, Your Honor. There isn't any requirement that the same words be used in the past. In fact, there's many phrases that this court has addressed in this issue where lots of explanatory modifying language was used. And yet the point is, after reading the patent, does a person skilled in the art understand now that it is structure and that it is preexisting structure? Because I think that's what you have here. There's three limitations at issue. There is symbol generator, CPU software for pulling a network, CPU software for exchanging data. Each one of these things was... If we affirm the court blow on symbol generator, we don't even need to reach CPU software. That's correct. Symbol generator is in each of the claims at issue. And symbol generator, the point is, is that if you understand what it means now, persons skilled in the art, and the evidence on this is overwhelming, Your Honor. The expert testified again and again that these terms, whether they were used before, would be understood by a person skilled in the art now, after reading the patent, to connote preexisting software tools. They come on every device. The idea of a little code snippet that you use to take a symbol out of a graphics library, position it on the screen at an XY coordinate, that's so basic. It's a tool that already exists. It comes with a device. It's come with every computer for years. A symbol generator is a means for generating symbols. It does do that, Your Honor, and very often... That's a description of the function. Well, but you can take any term like detect mechanism and say, well, it's a mechanism that detects something, or digital detector is a detector that detects something. You can turn it around. But if the issue is, if it's a preexisting tool, like in a toolbox, you can have hardware tools and you can have software tools. And when you get a computer, for decades, when you get a computer, they come with certain tools already there for the programmer. And one of the tools that's already there is this idea of taking a symbol out of a graphics library and positioning it on a screen. That's existing. It's not something that the programmer creates or devises. It's already existing in its structure. And what I was going to say, I think the summary of the evidence at pages 4 and 5 in our brief on this is really decisive. At the hearing, the question is, so what symbol generator is used in these patents, 728 and 681, that connoted any particular structure to one of skill and the art? Answer, sure. It's the software that is used, as we talked about, the system for displaying the symbols, the images for each user on the screen. And I would note that every manufacturer of a device that can display stuff on the screen provides a library of software modules that a user or developer can use to display images on the screen. Then later on, the question, so to be clear, Dr. Goldberg, does this claim language symbol generator refer to one of ordinary skill, to existing specific algorithms, or to simply advise him what he might be able to devise? Answer, no, it refers to the use of software libraries that every device has in order to display an image on the screen at the right coordinates. At this point, the court comes in and says, well, let me ask you on the last slide, where does this suggest that the software would be available from the manufacturer of the device as opposed to being part of this invention? Witness, Dr. Goldberg, because just the act of displaying images on the screen is part of every device. You already get that. That's not part of our invention that you have to do. In fact, our invention is a combination claim here. Lots of hardware elements, lots of software elements. Basic elements, of course they're old. The idea that you take an image out of the library, put it on the screen. That's been true for computers for decades. The idea that you have a telephone and that you want to poll the network by sending a message to certain phone numbers. Every phone's been able to do that. That comes with a device. That's not our invention and that's not something that you have to do. That's a structure. It's a software structure, but it's still a structure. It's something that already exists. The court wanted to be clear about that. It went on and said, was this true in 2006? And the witness said, oh, yes, going back to the 60s. So it's very clear, we submit, Your Honor, that the witness was testifying here. These, symbol generator and the other two terms as well, they denote existing pieces of code that already comes with a device. It's not just a question of how you use it. At one point the court also said, well, look, I think he's talking about enablement because he was saying someone skilled in the art could use this stuff. Not create or devise it. The thing already exists. If you look at the testimony, the testimony is its structure. It already exists. Sure, someone can easily use it, but that doesn't mean it relates to enablement. They're not talking about how to create it. It already exists. Now, the other thing that's a clear error is the presumption. Don't forget, we didn't use the term means. There is a presumption here that it's not means plus function. And the court simply didn't apply that presumption. They gave lip service to it in summarizing the legal part. But when you look at the court's analysis, it clearly goes through trying to discount what Dr. Goldberg said or say it related to enablement or whatever. And he then says at one point he's not persuaded by it. But the fact is that even if he's not persuaded by Dr. Goldberg's testimony and you take it away, it still can't be means plus function because there's a presumption here. In effect, it's clear error when you have a presumption and you have all this testimony from the only person's guilt in the art who's testifying because the defendant's put in no evidence and they're not talking about the intrinsic evidence here. In that situation, with all that evidence and the presumption, for a lay judge to say, well, you know, I'm not persuaded by the expert and it sounds functional to me. Therefore, you know, it's means plus function. The law doesn't permit that. This court in Williamson did say the presumption's no longer strong. But it's still there. It was the defendant's burden to show that these terms do not connote structure. And they didn't do it. They put in no evidence. The only two places where the district court tried to find some support for that conclusion is what you decided, Your Honor, where he said basically that Dr. Goldberg said these terms, he's not sure if he heard them in the past, and, you know, he's not sure if he heard them in the past, but together he said they definitely would have meaning to a person's guilt in the art. And because that passage does not say that the terms have no clear meaning, it does not say that the terms, excuse me, that the terms, you know, would be a coined term lacking clear meaning. He never said any of those things. He simply said, in fact, I can read just what it is. Well, I did. One of skill in the art would understand what a symbol generator is. He said generator is a term of art. Symbol is a term of art. Whether you heard symbol generator in the course of studying computer science, I'm not aware. But certainly in the context of the patent specification and claim, one of skill in the art would understand what a symbol generator is. So I submit, Your Honor, and the same errors were made with the CPU software limitations as well. Again, you know, they had no evidence. Dr. Goldberg said they were existing pieces of code. I think in sum, Your Honor, what we have is just the disputed terms are all referred to well-known existing software tools. And incidentally, the court has talked of the structure doesn't have to be physical hardware, even if the software is physically on a chip. You know, things like the Apple Motorola case certainly talked about software rules, programming rules, things like that. So the issue is not whether the exact two words were used in the past. The issue is was there really a structure here in the past. And here there really was. The evidence is overwhelming. Every device comes with the module you need to send a message out to Polar Network or to open a channel to exchange data with other phone numbers or to simply grab a symbol out of the library and put it on the screen. You would hopelessly clutter specifications if you had algorithms for things like dialing the phone, sending a message. You don't need algorithms for that. These things refer to basic structure. You're well into your rebuttal time. Would you like to continue using it? No, Your Honor. Thank you for the reminder. I will reserve the rest of my time. Mr. Breen, please proceed. Thank you, and may it please the court. The claim terms at issue in this appeal are generic placeholder words for unspecified software, hardware, or perhaps some combination of the two we just don't know from the intrinsic or extrinsic record here. These phrases are tantamount to using the word means because they are expressly claimed in terms of functions and in terms of results, not in terms of any structure. And that kind of structurally generic claiming style is exactly what overcomes the presumption in Williamson and invokes Section 112.6. Now, AGIS' appeal hinges almost entirely on the testimony of its expert, Dr. Goldberg. The district court was not required to accept that testimony as true or as probative and had good reason not to in this case. For one, the bulk of the testimony went to an issue that was beside the point, went to the issue of whether a person skilled in the art would be able to implement the functionality in software or in hardware based on the knowledge that they have, not to the central question under Williamson, which is, and I'm quoting here, whether the words of the claim are understood as the name for structure. The words of the claim at issue here, symbol generator, AGIS' own expert admits, is not a name for anything that he is aware of in the field of computer science. The fact that he... In two different places, and that's different. That's correct, Your Honor. And I think it's worth noting that that fact finding is based on the extrinsic record and is subject to clear error review. And not only does the testimony we think speak very well for itself, but here the district court not only reviewed testimony in a declaration, but also heard Dr. Goldberg testify live and, in fact, questioned Dr. Goldberg. So when this district judge says he finds that testimony unpersuasive and finds that this is a coined term that lacks a clear meaning, we think AGIS has a very heavy burden on appeal to justify setting aside that finding. If this case had been one where symbol generator was a particular snippet of code that was well understood to operate according to a particular algorithm known by people of skill in the art, and if that's what the testimony was, would this be a different case? And I ask you that because I'm just a little bit concerned that if I take your arguments to the extreme that all software is now 112.6 and always requires disclosure of an algorithm, and I'm not sure that that's a place that I'd want to go on these facts. It may not be necessary, so you tell me what your thoughts are. Sure. Well, I agree with you, Your Honor. I don't think we need to go to that extreme to reach the correct result here or under the law. I actually think the court's recent media rights decision is very helpful in this regard where the term was compliance mechanism, and when it's a term that is essentially coined for purposes of the patent and doesn't have a clear meaning outside the context of the patent, this court in media rights observed that there was also nothing definitional about the term that you could devise from the intrinsic record. And the court said, and I'm quoting here, none of the passages in the specification, however, define compliance mechanism in specific structural terms. So the analog here would be we have a term symbol generator, and we know what it does, but we don't know what it is. We can, even if we were to assume that it connotes some sort of software function, we can avoid invoking Section 1126 if there's some definitional indication in the spec about what that symbol generator is. Or if the testimony had been the term symbol generator is known in the art to be a particular snippet of software that follows a particular algorithm. I think that would be helpful. I still think that if there was nothing in the intrinsic record whatsoever to support that, it would be different. Why? If a person of skill in the art says everyone of skill in the art would understand this term to have a plain and ordinary meaning in the art, and here is what it is, why would it need to be in the intrinsic record? Well, I do think media rights is looking for something in specific structural terms from the intrinsic record when it is a coined term. Well, then it wouldn't be a coined term, right, under my hypothetical. If everyone of skill in the art would recognize these two words as having a precise meaning in the art. If that were true, yes, absolutely. Under that hypothetical, I think that the burden to avoid invocation, I'm sorry, the showing to avoid invocation could be made. But here, we don't have anything other than the expert, Dr. Goldberg's, completely uncorroborated and conclusory assertion. Essentially, everything that was just argued by my... But he also says he doesn't know what the phrase means. Right, and I think that the district court looking at that testimony combined with all of the other assertions made by Dr. Goldberg that are not in any way corroborated was more than enough for the district court to reject that testimony as unpersuasive and find that the term didn't have a clear meaning. Dr. Goldberg, for example, showed not one example of what one of these software graphics libraries would be. He simply proclaims that a person with skill in the art would know what it is. And back to your point, Judge Moore, I do think that it's important that... And maybe if the district court judge on this record had gone the other way, under a clear error, we might have to affirm that too on this record. But that's just the nature of the beast. It's a factual question, and his testimony is a bit equivocal. Yes, I agree. I think the fact that the bulk of the evidence that's most pertinent to the question under Williamson is extrinsic leads to a fairly highly deferential standard in this case. So looking at the term symbol generator, which as Judge Wallach noted, this does affect all the claim terms on appeal and is dispositive. The way that these terms are phrased in the claims are incredibly functional. It's a symbol generator, quote, for generating symbols. A symbol generator, quote, that can generate symbols. There's no definition or indication in the specification of what the symbol generator is. All we know from the claims is that it's for generating symbols. And all we see in the specification is that it's some black box from which a symbol is ultimately going to be generated. Those kinds of generic placeholders have been recognized in cases like Williamson and in cases like Meteorites as being modules, essentially, that are unspecified and therefore don't give a person skilled in the art a sufficiently definite meaning as to what the structure connoted by that term is. The patent, we think it's important, is silent about any of the structure that Aegis' expert identified as supposedly being the structure. Well, they've already conceded that on appeal, so that argument you don't need to go into, right? Am I wrong? Haven't they conceded on appeal that if this is 112.6, there is no structure? They're not contesting that? Yes, yes, that's correct, Your Honor. So first of the indefiniteness prong to question, you're right. This court doesn't need to reach it in light of the concession. But what I was getting at is that the district court made a specific finding on this record that those structures are not mentioned by the patents or disclosed. And we do think that there's a little bit of overlap with that finding and the threshold invocation question. As this court in Williamson noted, citing function media, they said that, quote, the fact that one skilled in the art could program a computer to perform the recited functions cannot create structure where none is otherwise disclosed. And we think that's consistent with what media rights had to say about looking for some indication of what this term might mean. Why do you, you just, this is one of these things, sit down when you're ahead, but why in the world did you just suggest to me that deciding whether there's structure in the specification or not is something to which we would give deference? Why is that not part of claim construction, which is the legal part, deciding what structure in the spec corresponds to the 112-6? It's always been in the past. I mean, are you of the view that something has changed? We have lots and lots of cases that say that's part of the legal question. And, Your Honor, I did not mean to imply that the finding as to what's in the intrinsic record is entitled to deference. That's not our position. So that wouldn't be a finding then, it would be a legal conclusion. Yes, what's in the specification is a legal conclusion. I was just pointing out the district court did adopt that and that there is some overlap between a finding like that going to the issue of indefiniteness under prong two. Might want to stop calling it a finding because findings are what district courts do when they have facts, legal conclusion, legal determination, or something like that. Okay, I can agree with that, Your Honor, certainly. As to the issue of whether the presumption was applied by the district court, I do just want to briefly comment that we do not think that the district court did anything inappropriate in multiple places. In its opinion, the district court observed that there was a presumption in place. At the time, it was pre-Williamson and the presumption was arguably stronger, although the district court notably did not mention any particular strength of the presumption in its decision. AGIS is positioned that Life 360 could not possibly overcome the presumption because we did not offer our own testifying expert we think is misplaced. What we did offer is considerable evidence from the intrinsic record to the district court to show that there was highly functional claim language in terms of defining the symbol generated in the CPU software terms. We offered other evidence of the intrinsic record being silent about any structure whatsoever or any definition, and most importantly, as we talked about earlier, we did offer critical evidence in the way of admissions from AGIS' expert proving what is essentially a negative, that these terms do not mean anything to a person skilled in the art and are only coined terms. We don't see why we would have to additionally bring in yet another expert to simply say what we've already gotten AGIS' expert to admit. I agree with AGIS' counsel that the issues are largely overlapping between CPU software and the symbol generator terms, so if the court has no questions on the CPU software terms, I can yield the rest of my time. Very good. Okay. We have some rebuttal time yet. Thank you, Your Honor. To be clear, we don't dispute that there is a differential standard on the underlying fact-finding. I think whether or not there's a presumption and whether that should govern, I think that might be a question of law, but we're basically talking about the judge's finding, which we say is clearly erroneous, that a person skilled in the art would not understand the meaning of these terms. With all due respect, we don't think the testimony is equivocal. It's just not. If you look at the summary of testimony, pages 4 and 5 of the reply brief, it's overwhelming, and the only two things the judge pointed to don't say that this was a coined term or that it lacked clear meaning. They just don't say that. The judge is wrong when he drew that conclusion. What he said was, I'm not sure, I'm not aware whether the word generator and symbol were used together in the past, but persons who read this... Or appear in any technical treatise or appear in any dictionary or were ever taught to people who studied software in college. Those were all parts of his testimony as well. He's not aware of those two terms being put together in any of those places. Correct. But in the context of this patent, Your Honor, he said that persons skilled in the art reading this patent would know immediately what symbol generator is and that it's something that already exists. But he didn't provide any evidence of that other than his testimony. Exactly, but his credibility was never challenged, Your Honor. In other words, this is not an issue where the credibility of the witness is challenged. It's just a question of what he said. So he's the expert, the judge is not. He's the expert on whether persons skilled in the art would understand when they read this patent. As to the meaning of the term symbol generator, his credibility as an expert was challenged. I'm not sure, not as to his knowledge of what persons skilled in the art would understand. I think the judge drew the conclusion that because the words weren't used in the past together that therefore they lack clear meaning or a coined term. But he didn't say that. He said even if persons skilled in the art hear these two words together for the very first time, having read this patent, they would know what this is. It's a preexisting structure. And I think that's the standard. If you look at Inventio case, if you look at that, you will see that it's after you read the patent. In that context, does a person skilled in the art understand that this is describing a particular class of structures? And the answer here is the evidence said yes. And if you take that evidence away and say, okay, Dr. Goldberg doesn't appear, they didn't point to anything intrinsic here. Basically, under the presumption, this is not means plus function. It was never intended to be. There's a clear problem. If a drafter doesn't intend to use means plus function, he drafts it without the means for language. He drafts it for persons skilled in the art, all of whom understand without any further explanation, it's not necessary, what a symbol generator is because it comes with every single device, every computer has for years. Then to have a judge come along and say, well, you know, we don't know what it means and it sounds functional, therefore it's means plus function. That really shouldn't happen, and this should be reversed. Okay. Thank both counsel for their argument.